UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEPOSITORS INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:17-cv-00803-JAR |
| ) | |
| NEU CONSTRUCTION SERVICES, INC., ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Depositors Insurance Company's ("Depositors") Motion for Summary Judgment. (Doc. 29.) Defendant NEU Construction Services, Inc. ("NEU") and Defendants Joe Adams and Deanna Daughhtee (the "Property Owners") filed individual responses. (Docs. 37, 39.) Depositors filed replies. (Docs. 43, 46.)

**I.  Background**

Depositors is an Iowa company that sells insurance, including commercial general liability ("CGL") policies. (Doc. 1 at ¶¶ 1, 7.) NEU is a Missouri company that provides construction services, including home remodeling services. (*See id.* at ¶ 2; Doc. 17 at ¶ 5.) Depositors sold NEU a CGL policy that was in effect from August 21, 2011, to August 21, 2012 ("the Policy"). (Doc. 1-1 at 8.)[1]

---

[1] NEU correctly notes that Depositors' Complaint referenced a policy in one paragraph with effective dates of August 2010 to August 2011 but has attached to it policy documents with effective dates of August 2011 to August 2012. *Compare* (Doc. 1 at ¶ 7) *with* (Doc. 1-1 at 8). However, it is clear from the body of the Complaint and the briefing that the agree as to the substance of the policy at issue. Thus, the Court does not find that this inconsistency creates a

1

Property Owners hired NEU to oversee the construction of a second-story veranda for their Richmond Heights, Missouri, home. (Doc. 1-5.) During construction, NEU's subcontractor installed an "EPDM Waterproof Membrane" on top of the concrete slab that supported the floor of the veranda. (*Id*. at 5-6.) In March 2011, the floor of the veranda began leaking into the first story of the home. (*Id*. at 6-7.) Repairs were attempted in the fall of 2012, but leaks continued. (*Id*. at 7.) Ultimately, NEU failed to stop the leaks, and the Property Owners suffered substantial property damage. (*Id*.)

In April 2013, NEU notified Depositors of the damage. (Doc. 17 at ¶ 5.) On May 28, 2013, Depositors wrote to NEU, informing it that the loss may not be covered under The Policy and reserving its rights "under [The Policy] and applicable law." (Doc. 1-2.) On June 6, 2013, Depositors wrote to Property Owners, informing them that it would not cover any damage attributable to NEU's or its subcontractors' workmanship, absent negligence. (Doc. 29-2.) Then, on August 26, 2014, Depositors wrote again to NEU, informing it that the loss was not covered under The Policy. (Doc. 1-3.) The letter directed NEU to immediately contact Depositors "[i]n the event that you receive any communication concerning [the Property Owners'] loss." (*Id*.)

In the meantime, on February 7, 2014, Property Owners instituted an arbitration action for breach of contract against NEU, seeking $485,219.43 in compensatory damages caused by the substandard installation of the EPDM membrane. (Doc. 1-4.) Property Owners alleged that the installation amounted to a breach of contract. (*Id*.) On March 24, 2015, the arbitrator awarded Property Owners $436,551.48 plus interest. (Doc. 1-5.) Although the arbitrator found that the damage was caused by a failure of the EPDM membrane, rather than some defect in its

---

genuine issue of material fact.

installation, he concluded that the failure was a breach of the contract between Property Owners and NEU. (*Id.*) The arbitration award was confirmed in the Circuit Court of St. Louis County and judgment was entered on August 18, 2015. (Doc. 1-7.)

Depositors alleges that it first learned of the arbitration award in January 2016, after the time to appeal had passed. (Doc. 31 at ¶ 11.) NEU disputes this allegation, asserting that there is no record evidence to support it (Doc. 37 at ¶ 4), however, NEU provides no evidence to the contrary. On February 28, 2017, Depositors filed suit, seeking a declaratory judgment that it was not liable to NEU for the arbitration award because NEU's breach of contract is not covered by The Policy and because NEU failed to notify Depositors of the arbitration demand as required by The Policy. (Doc. 1.) NEU answered, alleging that Depositors' May 28, 2013, June 6, 2013, and August 26, 2014, letters stating that Depositors would not cover the damage absolved NEU from the notice requirement and advancing three counterclaims alleging that Depositors is liable for the arbitration award. (Doc. 17.) Thereafter, Depositors filed this Motion for Summary Judgment.

## II. Legal Standard

"Summary judgment is proper where the evidence, when viewed in a light most favorable to the non-moving party, indicates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 654 (8th Cir. 2007); *see* Fed. R. Civ. P. 56(c). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Id.* "The basic inquiry is whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.,* 418 F.3d 820, 832 (8th Cir. 2005) (internal quotation marks and citation omitted). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). If the movant does so, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. *Anderson*, 477 U.S. at 249.

In determining whether summary judgment is appropriate in a particular case, the Court reviews the facts in a light most favorable to the party opposing the motion and gives that party the benefit of any inferences that logically can be drawn from those facts. The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Osborn v. E.F. Hutton & Co., Inc.*, 853 F.2d 616, 619 (8th Cir. 1988). In considering a motion for summary judgment, the Court may not make credibility determinations, weigh the evidence, or draw inferences from the facts. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

**III. Discussion**

**a. The arbitration award against NEU was not a covered "Occurrence."**

Depositors argues that it is clear under Missouri law that it is not liable to NEU. The Policy, like nearly all GCL policies, insured NEU against property damage caused by an "occurrence." (Doc. 1-1 [hereinafter "*Policy*"] at § I.1.b.) The Policy defines "Occurrence" as an "accident, including continuous or repeated exposure to substantially the same harmful conditions." (*Id*. at § V.13.) Depositors notes that the arbitration award was for NEU's breach of contract, noting that the arbitrator cited violations of specific sections of the contract and that Property Owners' only claim was for breach of contract. (Doc. 30 at 4.) Depositors cites *Secura*

4

*Ins. v. Horizon Plumbing, Inc.*, 670 F.3d 857, 862 (8th Cir. 2012), and other cases for the proposition that, under Missouri law, a breach of contract is not an accident and therefore not an occurrence. (Doc. 30 at 4.)

NEU responds that the root cause of the arbitration award was the failure of the EPDM membrane and that Property Owners' decision to proceed under a breach of contract theory does not alter the accidental nature of that failure. (Doc. 37 at 7-9.) Alternatively, NEU relies heavily on a law review article by attorney and Adjunct Professor of Insurance Law Christopher C. French to argue that interpreting "occurrence" to preclude breaches of contract is bad policy. *Construction Defects: Are They "Occurrences"?*, 47 Gonz. L. Rev. 1 (2012).

"As with any other contract, the interpretation of an insurance contract is generally a question of law, particularly in reference to the question of coverage." *D.R. Sherry Const., Ltd. v. Am. Family Mut. Ins. Co.*, 316 S.W.3d 899, 902–03 (Mo. 2010) (quoting *H.K. Porter Co. v. Transit Cas. Co.,* 215 S.W.3d 134, 140-41 (Mo. App. 2006)). "The issue of coverage becomes a jury question only when the court determines that the contract is ambiguous and that there exists a genuine factual dispute regarding the intent of the parties." *Id*. Where, as here, federal jurisdiction is based on diversity of citizenship, state law governs the interpretation of insurance policies. *Secura*, 670 F.3d at 867.

The Court agrees with Depositors that *Secura* is instructive. In that case, a plumbing subcontractor neglected to connect two drainpipes, resulting in moisture, mold, and flooding in several units of a newly-built apartment complex in Kansas City. *Id*. at 859-60. The commercial real estate developer behind the project sued the general contractor for breach of contract based on, among other things, its failure to correct deficient and defective work performed by the subcontractor. *Id*. at 860. The developer won, and the general contractor sought to recover from

5

the subcontractor's insurers $1.1 million in fees and costs associated with defending the subcontractor. *Id*. The insurers sought a declaratory judgment that they were not liable because, among other reasons, the developer's breach of contract claim was not an "occurrence" under the subcontractor's policy. *Id*. at 861. The district court granted summary judgment to the insurers, and the Eighth Circuit affirmed. *Id*. at 864.

*Secura* turned on the insurers' duty to defend: "[t]he central insurance question [was] whether [the developer's] breach of contract claim against [the general contractor] stated a claim for property damage caused by an 'occurrence' and triggered a duty to defend." *Id*. at 861. Like the policy in this case, the trigger for the insurers' duty to defend was an "occurrence," defined as "an accident, including continuous or repeated exposure to substantially the same harmful conditions." *Compare id*. at 862 *with Policy* at § V.13. In affirming the district court's grant of summary judgment, the Eighth Circuit held that, "under Missouri law, a lawsuit seeking damages caused by breach of contract does not state an 'occurrence.'" *Secura*, 670 F.3d at 862 (citing *J.E. Jones Constr. Co. v. Chubb & Sons, Inc.,* 486 F.3d 337, 341 (8th Cir. 2007)). The court further explained that "the plain meaning of accident is '[a]n event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event.'" *Id*. (quoting *Am. States Ins. Co. v. Mathis*, 974 S.W.2d 647, 650 (Mo. Ct. App. 1998)). Because "[p]erformance of the contract according to the terms specified therein was within [the general contractor's] control and management," the court concluded that the general contractor's "failure to perform cannot be described as an undesigned or unexpected event." *Id*. (quoting *Hawkeye-Sec. Ins. Co. v. Davis,* 6 S.W.3d 419, 426 (Mo. Ct. App. 1999)).

The Court reaches the same conclusion in this case. NEU asserts that Depositors must indemnify it for the $436,551.48 plus interest awarded to Property Owners for NEU's breach of

contract. As the Eighth Circuit made clear in *Secura*, such an award is not an "occurrence" as the term is defined in The Policy, and it therefore does not trigger Depositors' duty to indemnify NEU. NEU's argument that *Secura* is distinguishable due to the "degree" of breach is not persuasive; the Court sees no reason to conclude that the Eighth Circuit endorses a case-by-case analysis of the severity and scope of any given breach of contract, especially in light of the Circuit's clear pronouncement that, "under Missouri law, a lawsuit seeking damages caused by breach of contract does not state an 'occurrence.'" *Id.* at 862. That *Secura* dealt with an insurer's duty to defend in a lawsuit for breach of contract and this case deals with an insurer's duty to indemnify in the event of an arbitration award for breach of contract is not a basis for the Court to distinguish the cases.

For their part, Property Owners argue that the damage arose from defective work and that their decision to pursue recovery on a breach of contract theory is secondary. (Doc. 39 at 3.) In support, they note that their arbitration demand included allegations that the membrane failed due to negligent design. (*Id*.) Accordingly, Property Owners argue that whether the damage was caused by the negligent installation of the EPDM membrane is a factual dispute because a subcontractor's negligence is an unforeseen "occurrence." (*Id*.) The Eighth Circuit held in *Secura* that an award for breach of contract was not a covered occurrence even when the underlying allegations included the "failure to correct deficient and defective work." 670 F.3d at 862. Besides, Property Owners' arbitration demand expressly identified NEU's breach of contract as the cause of action. (Doc. 1-4.) In fact, it was titled "Demand for Arbitration Breach of Contract." (*Id*.) Property Owners' belated attempt to argue that the award was for something other than NEU's breach is ineffective. Likewise, *Secura*'s holding precludes Property Owners' negligence argument as well.

### b. NEU did not give notice as required by The Policy.

Depositors additionally argues that NEU is precluded from coverage because it failed to meet its contractual duty to notify Depositors of the Property Owners' arbitration demand. (Doc. 30 at 7-10.) As an initial matter, the Court recognizes NEU's assertion that it lacks sufficient information to address Depositors' claim that NEU did not provide notice of the arbitration demand because the Court previously cancelled the Rule 16 conference at which initial disclosures would have been exchanged. (*See* Doc. 48 at ¶ 2.) The Court cancelled the Rule 16 conference because NEU and Property Owners requested additional time to respond to Depositors' Motion for Summary Judgment. (Doc. 34.) Moreover, the Court notes that NEU offers no evidence that it expressly notified Depositors of the arbitration demand, which evidence would presumably be in NEU's custody already. Indeed, NEU does not even allege that it notified Depositors of the arbitration demand. Finally, as the Court has already determined that Depositors is entitled to summary judgment because the arbitration award was not an "occurrence," it concludes that NEU's request for time to conduct discovery as to the notice issue is unnecessary.

Based on the record before it, the Court concludes that NEU failed to adequately notify Depositors of Property Owners' arbitration demand. The Policy includes the following language:

> **2.** Duties In The Event Of Occurrence, Offense, Claim Or Suit
>   . . .
>   **b.** If a claim is made or a "suit" is brought against any insured, you must:
>     **(1)** Immediately record the specifics of the claim or "suit" and the date received; and
>     **(2)** Notify us as soon as practicable.
>   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

(*Policy* at § IV.2.b.) The Policy's definition of "suit" includes arbitration. (*Id.* at § V.18.) Under Missouri law, an insured's failure to timely notify an insurer can relieve the insurer of its duties under the contract, but only if the failure prejudiced the insurer. *Johnston v. Sweany*, 68 S.W.3d 398, 402 (Mo. 2002); *see also Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co.*, 325 F.3d 1024, 1028 (8th Cir. 2003). The burden is on the insurer to prove prejudice. *Sweany*, 68 S.W.3d at 401. "Although a question of fact, the issue of prejudice may become a question of law if all reasonable persons would conclude the insured did not provide notice in a reasonable time." *Interstate Cleaning*, 325 F.3d at 1029. The failure to notify an insurer of a judgment until after it becomes final is unreasonable. *Id*.

Like the insurers in both *Sweany* and *Interstate Cleaning*, Depositors was "deprived . . . of the opportunity to investigate facts, to defend on liability, to settle the lawsuit, and to choose a trial strategy." *Interstate Cleaning*, 325 F.3d at 1029. NEU's failure to notify Depositors when Property Owners initiated the arbitration as required by The Policy thereby prejudiced Depositors.

NEU argues that its April 2013 communication with Depositors was sufficient notice because "[t]he claims reported were the very same claims made in the subsequent Demand for Arbitration." (Doc. 37 at 13.) The Court disagrees. "An insured's failure to give timely notice may be excused by substantial compliance." *Id*. at 1028 (citing *Tresner v. State Farm Ins. Co.*, 913 S.W.2d 7, 10 (Mo.1995) (en banc)). The duty to notify Depositors of a "suit" is expressly stated under The Policy, apart from any other duty. Thus, Property Owners' arbitration demand represented a new and significant change to the posture of the matter and gave rise to a new duty to notify Depositors of an impending "suit." Finally, Depositors' prejudice flows not from the damage to Property Owners' home, but from its inability to address

9

their arbitration demand. Thus, even if NEU's pre-arbitration communication put Depositors on notice of Property Owners' damage claim, it could not have adequately notified Depositors that it risked losing its opportunity to contest or settle a future arbitration demand.

NEU argues that Depositors' denial-of-coverage letters operated as a waiver of the requirement and estopped it from asserting lack of notice as a defense. (Doc. 37 at 13-15; Doc. 17 at 6.) It further asserts that notice of Property Owners' arbitration demand would have been futile given that Depositors had already denied coverage. (Doc. 37 at 13-15.) Depositors responds that its August 26, 2014, letter expressly reserved all of its rights under The Policy, including its right to notice and stated that it "shall not be interpreted as a waiver to assert and such right or defense." (*See* Doc. 43 at 5.) In addition, Depositors notes that the June 6, 2013, letter was sent to Property Owners, not NEU. (Doc. 30 at 9.)

The Court first notes that NEU cites no case law in support of its arguments.[2] Some courts have held that a denial of liability operates as a waiver. *See NL Indus., Inc. v. Commercial Union Ins. Co.*, 926 F. Supp. 446, 456 (D.N.J. 1996) ("A repudiation of liability by the insurer on the ground that the loss is not covered operates as a waiver of the notice requirements of the insurance contract and other conditions precedent."); *Flodine v. State Farm Ins. Co.*, No. 99 C 7466, 2003 WL 1394977, at *8 (N.D. Ill. Mar. 19, 2003) (holding the same); *Same Day Delivery Serv., Inc. v. Penn Star Ins. Co.*, 151 F. Supp. 3d 380, 387 (S.D.N.Y. 2015) (holding that an across-the-board denial of coverage operates as a waiver). However, the Court finds that this case is distinguishable from the broad, across-the-board repudiation of coverage described in many cases enforcing a waiver. Here, Depositors denied coverage as to a discrete matter— Property Owners' leaky veranda—and not as to any other potential claim. In fact, the June 6,

---

[2] The only authority NEU provides is a citation to 6 Couch on Ins. § 85:64, which advises that

2013, letter sent to Property Owners states expressly that "[t]here is potential coverage for resulting damage to other areas of the residence." (Doc. 29-2.) Likewise, the August 26, 2014, letter sent to NEU references the Property Owner's claim, not a blanket repudiation of any coverage for NEU. (Doc. 1-3.) Moreover, because Depositors left open the potential for coverage in other instances, notice was not futile. In addition, a reservation of rights can prevent waiver despite a denial of coverage. *See Fin. Res. Network, Inc. v. Brown & Brown, Inc.*, 867 F. Supp. 2d 153, 186 (D. Mass. 2012). The May 28, 2013, letter to NEU expressly reserves Depositors' rights under The Policy. (Doc. 1-2.)

The Court reiterates that NEU's duty to notify Depositors of Property Owners' arbitration demand was separate from its duty to notify Depositors of Property Owners' damage claim. On that basis alone, the Court concludes that Depositors' letter did not waive its right to notice of the arbitration demand. Indeed, Depositors' denial of coverage as to Property Owners' initial claim was made without the knowledge that they would eventually seek an arbitration award. *See Sirignano v. Chicago Ins. Co.*, 192 F. Supp. 2d 199, 207 (S.D.N.Y. 2002) (holding that there can be no waiver unless the insurer has "full knowledge of the facts upon which the existence of the right depends").

NEU's estoppel defense fares no better. To estop Depositors from asserting its failure-to-notify argument, NEU must establish that "(1) [Depositors] asserted a policy defense in denying coverage [of the arbitration award] and later asserted another inconsistent ground, (2) [NEU] relied on the original policy defense, and (3) [NEU] suffered prejudice as a result of the reliance." *Interstate Cleaning*, 325 F.3d at 1028. NEU conflates Depositors' denial of the Property Owners' damage claim with Depositors' denial of the arbitration award claim. The two

---

whether the insurer was apprised of the true facts is a question for a jury. (Doc. 37 at 14.)

are distinct. Thus, the basis for and reliance on Depositors' earlier denial of coverage cannot support an estoppel argument as to Depositors' denial of coverage regarding the arbitration award.

**IV.     Conclusion**

For the foregoing reasons, the Court finds that Depositors is entitled to declaratory judgment that it does not have a duty to indemnify NEU for the arbitration award stemming from Property Owners' demand. Because NEU's counterclaims are premised on Depositor's failure to indemnify it for the arbitration award, the Court finds that those claims fail as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Depositors Insurance Company's Motion for Summary Judgment (Doc. 29) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant NEU Construction Services, Inc.'s counterclaims are **DENIED**.

An appropriate Judgment will accompany this Memorandum and Order.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

Dated this 29th day of March, 2018.